DOUGLAS A. PASSON, #017423
Law Offices of Doug Passon, PC
PO Box 4425
Scottsdale, AZ 85261
Telephone: 480.448.0086
Attorney for Defendant
doug@dougpassonlaw.com

IN THE UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

United States of America,

Plaintiff,

vs.

LOREN REED,

Defendant

CR-20-08098-PCT-SPL (ESW)

**MOTION TO DISMISS DUE TO LIKELY PRESENTATION OF INNACURATE, INCOMPLETE OR MISLEADING INFORMATION TO GRAND JURY**

**(Oral Argument & Evidentiary Hearing Requested)**

Loren Reed, through undersigned counsel, respectfully requests that this Court consider an order dismissing this case, as available facts and evidence point to government misconduct during the grand jury proceeding(s), including the exertion of improper influence over the proceeding by likely presenting of false, misleading, incomplete, and/or prejudicial and irrelevant evidence to the Grand Jury. Mr. Reed makes this motion pursuant to the Fifth Amendment to the United States Constitution. The motion is supported by the attached memorandum of points and authorities.

Excludable delay under 18 U.S.C. § 3161(h)(7)(B)(i) and (iv) may result from this motion or from an order based thereon.

Respectfully submitted: April 2, 2021.

DOUGLAS A. PASSON
Law Offices of Doug Passon, PC

*s/ Douglas A. Passon*
DOUGLAS A. PASSON
Attorney for the Defendant

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I. LAW AND ARGUMENT.

*A. Overview.*

The Fifth Amendment states that, "[n]o person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a Grand Jury. U.S. Const. amend. V. The great Justice Learned Hand famously stated, "[s]ave for torture, it would be hard to find a more effective tool of tyranny than the power of unlimited and unchecked *ex parte* examination." *United States v. Remington*, 208 F.2d 567, 573 (2nd Cir. 1953). The grand jury "is a constitutional fixture in its own right." *Nixon v. Sirica*, 159 U.S. App. D.C. 58, 74, n. 54 (1973). An independent and informed grand jury functions to discern innocence as well as guilt, to protect citizens from governmental persecution and to prosecute those who may have broken the law. *See U.S. v. Dionisio*, 410 U.S. 1, 16-17 (1973). In other words, the grand jury is supposed to exist as a buffer between the government and the people and must operate without the government putting its thumb on the scales of justice.

The grand jury is the prosecutor's tool, and "[a]ny experienced prosecutor will admit that he can indict anybody at any time for almost anything before any grand jury." *Dionisio*, 410 U.S. at 23 (Douglas, J., dissenting). The traditional requirement of secrecy and the *ex parte* nature of the proceedings allows for improper manipulation of a grand jury by the prosecutor. *See U.S. v Remington*, 208 F.2d 567, 572 (2d Cir. 1953); Fed. R. Crim. P. 6(e). As such, a prosecutor may not procure an indictment with perjured testimony or false evidence. *See U.S. v. Bracy*, 566 F.2d 649 (9th Cir. 1977). A federal court has the power to dismiss an indictment, "if it perceives constitutional error that interferes with the grand jury's independence and integrity of the grand jury proceeding." *United States v. Isgro*, 974 F.2d 1091, 1096 (9th Cir.1992)(citing *United States v. Larrazolo*, 869 F.2d 1354, 1357-58 (9th Cir. 1989)).

This case is different than most other criminal prosecutions, as it is one involving pure speech, not conduct. The starting point for any pure speech prosecution is the First Amendment, which prohibits the government from restricting expression because of its message, subject matter or content. *United States v. Stevens*, 559 U.S. 460, 468, 130 S. Ct. 1577, 1584 (2010); *see also* U.S. Const. amend. I. The hallmark of the First Amendment "is to allow 'free trade in ideas'—even ideas that the overwhelming majority of people might find distasteful or discomforting." *Virginia v. Black*, 538 U.S. 343, 358, 123 S.Ct. 1536, 1547 (2003) (citations omitted); *see also Texas v. Johnson*, 491 U.S. 397, 414, 109 S.Ct. 2533 (1989) ("If there is a bedrock principle underlying the First Amendment, it is that the government may not prohibit the expression of an idea simply because society finds the idea itself offensive or disagreeable"). Lastly, caselaw makes clear that in assessing whether pure speech can be criminalized, a

factfinder must consider "**the entire factual context** of [the] statements including: the surrounding events, the listeners' reaction, and whether the words are conditional." *United States v. Bagdasarian*, 652 F.3d at 1120 (emphasis added). At minimum, the government may not present false or misleading testimony or evidence to the grand jury. In a case involving the criminalization of pure speech, the first amendment requires the government to be even more circumspect in its presentation to guarantee a defendant's right to a fair determination of probable cause. The defense has reason to believe this did not happen here.

*B. The government likely interfered with the independence and integrity of the Grand Jury proceeding.*

In this case, the government almost certainly presented an inaccurate, misleading, and incomplete narrative to the Grand Jury by isolating the most troublesome words or phrases uttered and ignoring full statements, context, listeners' reactions, and conditionality of the statements. In other words, the government likely omitted the majority of his statements that would put his supposed "threat" in context, including repeated declarations of peaceful intentions, information showing many of the comments were made in jest, and vigorous debate unfolding in the marketplace of ideas. Moreover, Loren's statements concerning that his desire to see the courthouse burn were equivocal, conditional, rhetorical, often made in jest, and part of his mission to engage, educate, and even shock his friends.

Rather than let the grand jury assess the full context of the speech, the government likely cherry-picked language that furthered its narrative, depriving

an independent grand jury of reaching their own conclusions. Counsel believes this likely occurred because the government has engaged in a pattern of doing so on the record, starting with its Complaint (Doc. # 3) and press release. *Exhibit A*, *Press Release*, (6/4/20).

The following is a non-exhaustive list of examples where the government tailored its presentation of facts to suit its narrative:

1. *The government likely misled the Grand Jury to believe that Loren was planning a "riot" and created the Facebook chat to "burn down the courthouse.".*

The government only used the word "riot" in its press release. *See, Exhibit A*, Government Press Release ("In the chat, Reed was trying to convince people to join a meet up at the Page Courthouse and participate in a riot.") However, Loren used the words "riot" and "protest" interchangeably. Moreover, the Facebook invitation invited people to attend a "protest" in Page, not a "riot." *Govt. Disc. at 537.* The grand jury almost certainly never heard that Loren made several comments demonstrating the desire to engage in *peaceful protest*. *See, e.g., Id.* at 734 ("I'm on both sides! Both sides are wrong because ***protests should be peaceful***.")(emphasis added) *Id.* at 1622; ("They want us to riot during curfew so they can do anything they want to us during the protest."); *Id.* at 658 ("Look. All I really want is for them to take off the titles, the gear, the badges, and **join the peaceful side of the protests**. For a few days. Till we get the reform we're so desperate for.")(emphasis added); *Id.* at 663 ("If you really were a good cop. You'd **peacefully protest** as one of us with us, no title, bo [sic] badge, just abby [sic].")(emphasis added).

*2. Loren did not make an unequivocal threat to burn anything.*

Loren oscillated between saying he *wanted* to burn the courthouse, and that he would actually do it. *Id.* at 1653 ("I still wanna burn the courthouse down"); *Id*. at 1702 ("I wanna burn the court building down."); *Id.* at 1708 ("I wanna burn down the courthouse."). Wanting to see the courthouse burn, of course, is a far cry from truly threatening to do it. Moreover, the police had to guess about what courthouse Loren was supposedly targeting. *Complaint*, Doc. #3, at 4-5.

*3. The grand jury likely never heard (or saw) the ample evidence that Loren made his comments* ***in jest****.*

Those who engage with Loren, know that he speaks provocatively, and often jokingly. Loren "loves making people laugh" and has a "dark sense of humor". *Exhibit B , Indigenous Man Faces 10 Years for Facebook* Posts, Al Jazeera News, 1/19/21 (https://www.aljazeera.com/news/2021/1/19/holdindigenous-man-faces-10-years-for-facebook-comments-during-b). A cursory search of all of these exchanges will turn up numerous instances of the use of the abbreviations such as "lol" (laughing out loud), "jk" (just kidding), or "lmao" (laughing my ass off).

One of the many examples of this kind of chat exchange occurs with an individual named Scott Caldwell. Loren tells Scott he "wants" to burn down the courthouse. He goes on to say, "Keep cops away from me for 20 minutes." Immediately thereafter he says, "jkjk". *Govt. Disc.* at 1798. It is common knowledge that "jkjk" means, *"just kidding just kidding*." Scott keeps the joke going by saying he'll call in a distraction to the police station while "you guys" sneak over to the courthouse. Loren's response? "Lmao". *Id*. at 1797-98. In

common electronic communication, that means, “Laughing my ass off.” Notably, when another chat participant, Quadd McNeal, is “educating” Loren on the best fire accelerants, Loren’s initial reaction is, “Lmao ummm”. *Id*. 1658. Moreover, the chats and posts are replete with “emojis” signifying laughter. (🤣)

4. *The grand jury likely never heard that Loren’s comments were **conditional**.*

Loren expressed deep concern that any peaceful protest would be met with violent resistance from law enforcement. It was in this context that he talked about burning the courthouse. *Govt. Disc*. at 1784 (“I am totally down. I really wanna remain peaceful.”); *Id*. at 1630 **(**“It’s going to start peaceful, hopefully it stays peaceful. But as soon as gas and bullets are being sprayed I can’t really say what will happen next.”); *Id.* at 616 (“’Antifa’ and ‘left wing activism’ are used interchangeably. Meaning that if you publicly advocate for left policy (have a pride flag up, have a BLM sign in your yard, peacefully protest, etc) you are in danger of being labeled a terrorist and treated as such because of this intentionally broad wording. This is not ok. This also means they can kill you, no trial, and no lawyer.”); *Id*. at 657 (“Ive seen cops pretending to protest until everyones guard is down before they start with the rubber bullets and tear gas.”); *Id*. at 666 (“Lmao cops were tear gassing a bunch of the peaceful protesters. And that caused riots.”); *Id*. 1125 (“SWAT is headed DT Westlake. They have permission to open fire!!! PLEASE BE CAREFUL!!”); *Id.* at 1130 (“Trump calls governors facing unrest ‘week’ and ‘fools,’ urges stronger police tactics.); *Id*. at 613-14. (“Riot cops can’t keep up the oppression if they can’t see. Paint bombs (water-balloons

with thick paint), blind riot cops and slicken their gear. It's an easy effective tactic."); *Id.* at 1537-38 (emphasis added).

In the Complaint, the government seized upon Loren's words, "Assault, Arson and conspiring here we come" to frame its case. *Complaint* (Doc. #3) at 4. This is a perfect example of the government cherry-picking the most damaging language, without showing the full context of the statement. The full exchange from Loren is: "I ain't even gonna prepare – I'm just gonna suffer *if we get riot forced* – Imma get arrested actually – fuck it – Assault, Arson, and conspiring here we come." *Id*. at 4422. Loren expressed the desire remain peaceful and only cease being peaceful if and when the police use excessive force against the protestors. The peaceful protest could escalate to something more only if the police "riot forced" the people. *Id*. If the government is employing these tactics to bring the charge in the Complaint, it is fair to assume its presentation to the grand jury was similarly calculatedly incomplete.

*5. The government likely erroneously claimed that Mr. Reed advocated the burning or looting of private business.*

Again, in the government's sworn complaint, the government asserts that "They agreed to Loot Safeway Pharmacy." *Complaint* at 3. This is misleading at best, and flat out false, at worst. Another individual stated (likely in jest), stated "what pharmacies we looting tho" *Govt. Disc.* at 4484. Loren Reed simply responded that Safeway and Walmart were the only pharmacies in town. *Govt. Disc. at 4484. The other individual* then said, "Safeway it is". *Id.* at 4485. Loren never agreed to do such a thing. It is true there was a vigorous debate among many people about whether private business in the community should ever be intentionally targeted (again the purpose of free speech – debating the pros and

cons of what they are seeing unfold across America). The grand jury was likely not only misled to believe that Loren advocated looting private business, but they were also almost certainly not told that Loren Reed specifically advocated *against* such behavior, stating,

> **I'll admit yesterday I was wrong about the destruction of personal business. We can come together to fix all the collateral damage however. I myself swear to leave personal business alone. I hope everyone else here can come to this agreement also. Shit happens in times like this, some innocent buildings may get caught in the crossfire and that's very unfortunate . But i swear when it's all said and done I'll personally volunteer to help rebuild and raise money. You don't have to be a protester or any side of this but LOVE REACT IF YOULL HELP REBUILD. SHARE IF YOULL HELP REBUILD**.

*Id*. at 616-17.

Loren's words cannot be read in a vacuum that ignores the chaos unfolding in America, broadcast 24/7 over every media platform. Emotions were high, language was not carefully chosen. However, the chats are replete with language that shows Loren's goal was to organize a large, loud, and essentially peaceful protest, but that the protestors must also come prepared to respond to what he viewed as an inevitable violent government response. His concerns were understandable given the climate of "law and order" and fear established by the former occupant of the White House and carried out by law enforcement agents nationwide. His other, larger goal was simply to *engage* his Facebook audience in debate and the free flow of ideas. Perhaps one of the best illustrations of this

goal is his Facebook post three days before his arrest:

Loren Reed
May 30 ·

If you're a policeman or are in the military right now and you're currently getting deployed to police the ongoing riots then I strongly believe you should just resign now. You're on the wrong side of history today. You have a brain, you can read things, you can feel things. "Not all cops" aye? Is that what that they say? Not today my friend. Today it's all cops. Today you will be told to fire on your friends family and neighbors. Today you will break your oath or break your oath, you either kill who you were sworn to protect or disobey who you were sworn to obey. Real good cops would resign and find something more impactful to do with their lives. Real good cops would help us fight the bad cops.

I WONT LIMIT COMMENTS OR DELETE ANY.
LETS FUCKIN ARGUE THEN.

SHARE THIS SHIT

43 183 Comments 20 Shares

Like Share

Almost certainly none of this was put in any proper form or context during the grand jury proceeding. Instead, the government likely exercised undue influence over the grand jury, cherry-picking only the most troubling language, and giving the grand jury no choice but to reach the result sought by the government. As such, the grand jury transcript should be disclosed, and, if counsel's concerns are indeed accurate, and there is ample evidence to suggest they are, this Court should exercise its supervisory power to dismiss the indictment with prejudice.

Respectfully submitted: April 2, 2021.

DOUGLAS A. PASSON
Law Offices of Doug Passon, PC

*s/ Douglas A. Passon*
DOUGLAS A. PASSON
Attorney for the Defendant

Copy of the foregoing transmitted

by ECF for filing April 2, 2021, to:

CLERK'S OFFICE
United States District Court
Sandra Day O'Connor Courthouse
401 W. Washington
Phoenix, Arizona 85003

DAVID PIMSNER
KEVIN HAKALA
Assistant U.S. Attorney
United States Attorney's Office
Two Renaissance Square
40 N. Central Avenue, Suite 1200
Phoenix, Arizona 85004-4408

Copy mailed to:

LOREN REED
Defendant

# EXHIBIT A





**Department of Justice**

U.S. Attorney's Office

District of Arizona

FOR IMMEDIATE RELEASE Thursday, June 4, 2020

# Page Man Charged with Threatening to Burn Page Magistrate Court

PHOENIX, Ariz. – Loren Reed, 26, of Page, Arizona, was arrested on Tuesday, June 2, and charged in a complaint with a violation of Title 18, United States Code, Section 844(e) for using the internet and telephone to willfully threaten to unlawfully damage or destroy a building by fire. Reed appeared on the charges today before United States Magistrate Judge Camille Bibles of the District of Arizona.

According to the complaint:

On May 30, a concerned citizen called the Page Police Department and reported that Loren Reed had created a private Facebook chat group. In the chat, Reed was trying to convince people to join a meet up at the Page Courthouse and participate in a riot. Page Police Department officers then began monitoring the chat group in response to this report.

Between May 30 and June 2, Reed sent numerous messages in the chat group related to burning government buildings, including the Page Magistrate Courthouse and Page Police Department office. Re suggested June 2 at 9:00pm as the date and time for carrying out the plan. Reed encouraged others in th chat group to bring gas and other flammables. He also discussed the use of Molotov cocktails.

Reed was arrested on June 2, at approximately 7:00 p.m. on the charge outlined in the complaint.

A conviction for using the internet and telephone to willfully threaten to unlawfully damage or destroy a building by fire carries a maximum penalty of ten years in prison, a $250,000 fine, or both.

A criminal complaint is simply the method by which a person is charged with criminal activity and raises no inference of guilt. An individual is presumed innocent until competent evidence is presented to a jury that establishes guilt beyond a reasonable doubt.

The charges resulted from an investigation by the Page Police Department and the Federal Bureau of Investigation. The prosecution is being handled by Assistant U.S. Attorneys Todd Allison and David Pimsner, District of Arizona, Phoenix.

CASE NUMBER: 20-4089MJ
RELEASE NUMBER: 2020-55_Reed



###

For more information on the U.S. Attorney's Office, District of Arizona, visit http://www.justice.gov/usao/az/
*Follow the U.S. Attorney's Office, District of Arizona, on Twitter @USAO_AZ for the latest news.*

---

**Component(s):**
USAO - Arizona

**Press Release Number:**
2020-055_Reed

Updated June 4, 2020

